Matthias, J.
The record discloses that from December 26, 1905, to and including October 26, 1916, natural gas was furnished to the city of Cincinnati and to private consumers therein by The Union Gas & Electric Company and Thé Cincinnati Gas & Electric Company at a net rate of 30 cents per thousand cubic feet, in accordance with the provisions of ordinances prescribing such rate, in operation and effect throughout that period.
Under the provisions of Section 614-44, General Code, the municipality was authorized at any time within one year prior to the expiration of its contract with the gas companies, which was October 26, 1916, to proceed under the provisions of Sections 3982 and 3983, General Code, and fix by ordinance the rate to be charged for natural gas in said *273 city during the ensuing period, not exceeding 10 years, which upon its acceptance by the public utility would become operative unless within 60 days there was filed with the public utilities commission a complaint signed by not less than three per cent, of the qualified electors of the municipality, or unless within 30 days a referendum petition was filed as provided by Section 4227-2, Genr eral Code. Action was not taken by the council of the city until October 3, 1916, when an ordinance was passed fixing the price to be charged the city and private consumers therein at a net rate of 35 cents per one thousand cubic feet for a period of five years from November 4, 1916. 'This ordinance was duly approved by the mayor and accepted by the gas companies. No complaint of the rates thereby fixed was filed with the public utilities commission, but within the prescribed period of 30 days a petition bearing the signatures of the necessary 10 per cent, of the electors of said city, demanding a referendum on such ordinance and requiring its submission to the electors of the city at the August 1917 election for their approval or rejection, was duly filed. The filing of that petition effected a suspension of the operation of the ordinance, pending action thereon by the electors.. The result is that since November 4, 1916, no rate for natural gas prescribed by contract or ordinance has been in effect in the city of. Cincinnati. It is contended that the situation thus presented constitutes an emergency requiring the action of the public utilities commission under the provisions of Section 614-32, General Code, which is as follows:
*274 “The commission shall have power, when deemed by it necessary to prevent injury to the business or interests of the public or any public utility of this state in case of any emergency to be judged by the commission, to temporarily alter, amend, or with the consent of the public utility concerned suspend any existing rates, schedules or orders relating to or affecting any public utility or part of any public utility in this state. Such rates so made by the commission shall apply to one or more of the public utilities in this state, or to any portion thereof as may be directed by the commission, and shall take effect at such time and remain in force for such length of time as may be prescribed by the commission.”
The powers of the public utilities commission are conferred by statute and it possesses no authority other than that thus vested in it. The provisions of the section above quoted authorize the commission, in case of any emergency to be judged by the commission, to temporarily alter or amend, or with the consent of the public utility concerned, suspend any existing rates. As we have seen, no rates prescribed by ordinance or fixed by contract were in effect subsequent to November 4, 1916. There were no existing rates to alter, amend or suspend. If there had been, then, under the provisions of Section 614-32, General Code, it would have been within the province of the public utilities commission to determine whether any emergency existed calling for the exercise of the power conferred. We are of the opinion that the commission was right in its conclusion that the condition arising *275 from the suspension of the operation of the ordinance in question by the filing of a referendum petition does not constitute an emergency within the meaning of the law. State, ex rel. Menning, v. Zangerle, 95 Ohio St., 1.
The application of the city solicitor is in fact for an order establishing a rate. The only questions presented in this case, therefore, are whether the public utilities commission is authorized by statute to summarily fix a rate to be charged consumers of natural gas subsequent to the expiration of a contract between the public utility and municipality and during the period within which the operation of a new ordinance prescribing such rates is suspended by reason of the filing of a referendum petition, and whether its order overruling and dismissing an application therefor is unlawful or unreasonable.
The method of establishing rates for service by a public utility, when the same is not prescribed by ordinance, is provided by Section 614-16 et seq., General Code, and in accordance with the provisions of above-named section the gas company filed with the commission a schedule of rates it proposed to charge ior gas in the city of Cincinnati.
The contention of the city solicitor, that under the express provisions of Section 614-47, General Code, the public utilities act and the method of procedure therein prescribed have no application to prices and rates fixed by the council of a municipality under the provisions of Sections 3982 and 3983, General Code, overlooks the decisive fact that subsequent to November 4, 1916, there was no *276 effective ordinance of the city prescribing rates of charge for natural gas. No authority has been conferred upon the commission by statute to suspend rates other than that heretofore commented upon. Even if complaint had been filed with the commission pursuant to the provisions of Section 614-44, General Code, and an appeal from the rates prescribed by the ordinance thus taken to the commission, under the express provisions of Section 614-45 the rates fixed by the ordinance would not by such procedure be suspended, vacated or set aside.
Under the provisions of Section 614-21 et seq., General Code, the prices and rates set forth in the schedule filed by the company may be reviewed by the commission either upon its own initiative or upon the complaint of any person, firm or corporation. This schedule is therefore properly on file with the commission. If the rate proposed be challenged, it then becomes the duty of the commission to hear the matter fully, and from a thorough investigation determine whether the rate proposed is unjust or unreasonable. Such thorough investigation would be required, particularly in view of the fact that the rate proposed in the schedule filed is the same as that prescribed by the suspended ordinance passed by the chosen representatives of the city. If the electors considered that an emergency existed calling for early action, that could have been obtained by the submission of the rate ordinance to the electors at a special election under the provisions of Section 4227-5, General Code (104 O. U, 239).
*277 In refusing to summarily establish a new rate, effective pending action upon the referendum petition, and in overruling the motion to strike from its files the schedule of rates proposed by the gas company, the commission committed no error. Its order therefore is in all respects affirmed.

Order affirmed.

Nichols, C. J., Newman, Jones, Johnson and Donahue, JJ., concur.